No. 813

First Circuit

———

HARRIS v. LONG, BELL LUMBER CO.

———

(June 16, 1931. Opinion and Decree.)

———

Cline, Plauche & Girod, of Lake Charles, attorneys for plaintiff, appellee.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellant.

ELLIOTT, J. Walter Harris, employed by Long, Bell Lumber Company as section foreman, claims that on September 3, 1929, while performing services arising out of and incidental to his employment, some foreign body accidentally got into his right eye, causing him the loss of his eye. He claims compensation of the defendant on said account at the rate of $13.65 per week for a period of 100 weeks.

Employment and the payment of compensation for a period of 2 weeks and 4 days on account of plaintiff's claim of injury to his eye is admitted, but liability for the compensation claimed in the petition is denied.

An averment of prematurity in the petition, not acted on in the lower court nor urged in plaintiff's brief, is looked on as abandoned.

There was judgment in favor of plaintiff as prayed for.

Defendant has appealed.

The loss of plaintiff's right eye is conceded, but defendant contends that the preponderance of the evidence on the subject shows that it was not lost as a result of accidental injury received in its service, but as a result of a disease existing in plaintiff's system long before the time of the alleged injury to his eye.

The plaintiff testifies that, when he threw the switch on defendant's railroad at the camp called Cupples, which was on or about September 2 or 3, 1929, and around 10 or 11 a. m., something hit him in his right eye; that he threw his hand over his eye, got on a flat car, went into the quarters, and asked the boys to come and see what was in his eye; that, his eye paining him, he went that evening to see Dr. Kidd, who gave him an eye wash which he used for 4 or 5 days; that he did not stop work, but, his eye growing worse, he went back to see Dr. Kidd, who sent him to Dr. Iles, an eye specialist, who treated him for a month or more; that while being treated by Dr. Iles he lost the sight of his eye.

The fact that plaintiff complained on or about September 2 or 3, 1929, while working for defendant, about getting something in his eye, is corroborated by other employees, and we have no reason for doubting that such a complaint was made and that actual injury was received in the way alleged.

I. T. Jines, plaintiff's foreman, testified that plaintiff had been working for defendant on its railroad as section foreman for 7 or 8 years or more; that during or about 1920 plaintiff excused himself for not having lined up a track correctly by saying that he had a bad eye and was sick.

Mr. Jines remembered when plaintiff got his last injury. He says that prior thereto plaintiff's work as section foreman under his supervision was satisfactory; that it required a good vision to be able to properly line up a track; that it cannot be done properly with one eye; and that a man with one eye cannot properly drive a spike.

The evidence shows that the work of section foreman requires the use of two good eyes; that plaintiff did not complain about his eye previous to the time mentioned, but after the accident mentioned he complained and was unable to satisfactorily do the work he had formerly done because of impaired vision.

The evidence shows that plaintiff, some 7 or 8 years before, received injury over his left eye leaving a scar. We take it that this is the injury which Mr. Jines had in mind in speaking of plaintiff's complaint about his eye in 1920.

The evidence shows that at the time plaintiff alleges he received his present injury he had for some 7 or 8 years before satisfactorily performed the work of a section foreman; that the work required the use of good vision in both eyes and no complaint existed on that subject, but after the injury he was unable to see well enough, after a few days, to satisfactorily perform the work which he had for years formerly done with satisfaction. This showing tends to strongly corroborate the plaintiff in his claim to accidental injury resulting in the loss of his eye, as alleged in his petition. Dr. Kidd, who first treated plaintiff, was not called as a witness; the failure to do so is not explained. Defendant contends, however, that the evidence does not show with reasonable certainty the loss of plaintiff's eye as the result of the alleged accident, but that the loss is rather to be attributed to disease lurking in plaintiff's system which insidiously destroyed his eye.

This theory depends on the testimony of two physicians who claimed to have found conditions in the eye, the sight of which was destroyed, which were more likely produced by disease of the kind they described than of a trauma in the eye, admitting, however, that usual and customary tests made to discover the disease, which tests appear to be about 75 per cent efficient, failed to disclose the presence of the disease, upon the existence of which their theory depends for a supporting ground.

Defendant takes the position in its brief that a conflict exists between the testimony of one of the physicians who testified for the plaintiff and that of one who testified for the defense, in that one noted a scar on one side of the eye in which the sight was lost, while the other noted a scar on the opposite side. But we do not consider the matter important; there might be in fact a scar on each side. Then again we notice that the physician relied on by the defendant, speaking of an ulcer which he found in the cornea of the eye in question, says in one part of his testimony that it was on the temporal side, but afterwards says it was on the nasal side. We are satisfied that the expression was a mere inadvertence on the part of the physician, perhaps a stenographical mistake. Either way, the matter is not important.

To accept the diagnosis advanced by the two physicians called by defendant as the cause of the loss of sight in plaintiff's right eye will require us to conclude that the disease which they name, lying dormant in plaintiff's system, suddenly made

a virulent attack on plaintiff's right eye, and after destroying the sight it then subsided about as fast as it had attacked, leaving plaintiff in all other respects in a condition of apparent normalcy and although recently virulent, it left no evidence of its existence behind.

Such a conclusion is not easy to arrive at, but, suppose such a conclusion to be the most probable, it then seems that we must rationally conclude that such a virulent attack, after so many years of dormancy, was most likely brought about by some accidental hurt of great force; otherwise it would have remained in a state of quiescence.

Four physicians, without apparent connection of any kind which could influence their conclusion, gave it as their opinion that the loss of the sight of plaintiff's eye was not due to disease lurking in his system, that plaintiff has no such disease, but was due to trauma, thus supporting plaintiff's contention that something got into his eye, as alleged in his petition.

The evidence in our opinion supports the cause of the plaintiff and justifies recovery.

The judgment of the lower court is correct, except in regard to the rate of interest allowed. In the lower court the plaintiff was allowed 8 per cent per annum interest on the installments due. Only 5 per cent should have been allowed.

For these reasons the judgment appealed from is now amended so as to allow 5 per cent per annum interest on the installments due, instead of 8 per cent as allowed in the lower court. As thus amended, the judgment appealed from is affirmed; defendant-appellant to pay the cost in the lower court, plaintiff-appellee the cost of appeal.