## SUNNY POINT PACKING CO. v. FAIGH.
### No. 6924.

Circuit Court of Appeals, Ninth Circuit.
March 7, 1933.

922

A. H. Ziegler, of Ketchikan, Alaska, and R. P. Wisecarver, of San Francisco, Cal., for appellant.

George B. Grigsby, of Ketchikan, Alaska (Robert W. Jennings, of Sacramento, Cal., of counsel), for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

MACK, Circuit Judge.

Defendant appeals from a judgment for plaintiff in an action brought in 1927, under the Alaska Workmen's Compensation Act, chapter 98, Session Laws 1923, as amended by chapter 59, Session Laws 1925, for the death of her husband, John Faigh.

The answer admitted that plaintiff's husband disappeared on July 24, 1926, from the fishtrap of defendant where he was employed and that defendant had no knowledge of his whereabouts since that date.

Plaintiff's evidence showed the following facts: Faigh was employed as a watchman on a floating fishtrap maintained by defendant near Ketchikan to catch salmon. The trap was anchored in the North Pacific in about seventeen fathoms of water and was fastened by means of a cable to the shore, about a thousand feet away. There was a small hut on the shore, for the watchman's use. On July 24, 1926, a sudden and severe storm occurred. After it had subsided, a diligent but fruitless search was made for Faigh, who had last been seen two or three days before the storm by another employee of defendant. The storm caused considerable damage to the trap; a cabin built on it as a shelter for the watchman was washed off but was later found afloat; a skiff, customarily fastened to the trap and used by the watchman to go to and from the shore was lost. Faigh was a small man, not very strong, and at the time of his disappearance about 69 years old. He and plaintiff had been married in 1883 and they had never been separated prior to his departure for Alaska in June, 1926, to take his position with defendant.

Defendant introduced no evidence. Judgment was rendered on the verdict in the sum of $3,900 (the statutory amount) with interest at 8 per cent. from July 24, 1926, and costs, including an attorney's fee of $1200.

Defendant assigns the following errors:

■ 1. Inapplicability of Workmen's Compensation Act.

We cannot concur in the contention that because the death occurred on navigable waters, the admiralty law rather than the Alaska Compensation Act applies.

In our judgment the case is governed by the principle of Sultan Ry. Co. v. Dept. of Labor (1928) 277 U. S. 135, 48 S. Ct. 505, 506, 72 L. Ed. 820, and cases there cited; see, too, Crowell v. Benson (1932) 285 U. S. 22, page 39 note 3 at page 40, 52 S. Ct. 285, 76 L. Ed. 598. In the Sultan Case, the court upholding under a state workmen's compensation act, jurisdiction in respect to logging operations, a part of which took place in navigable waters, said: "It is settled by our decisions that, where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations, and liabilities of the parties, as between themselves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with its uniformity."

State Industrial Board of New York v. Terry & Tench Co. (1926) 273 U. S. 639, 47 S. Ct. 90, 71 L. Ed. 817, reversing Lahti v. Terry & Tench Co. (1925) 240 N. Y. 292, 148 N. E. 527, in which the New York court held state compensation proceedings invalid, presents facts somewhat analogous to those in the instant case; there "claimant, employed in the construction of a pier, was injured while standing on a floating raft in navigable waters."

In so far as the opinion in Ketchikan Lumber & Shingle Co. v. Bishop (C. C. A. 9, 1928) 24 F.(2d) 63, 64, decided before the Sultan Case, may be open to the inference that state workmen's compensation acts are necessarily inapplicable if the services are maritime in character, it is not consistent with the principle enunciated in the Sultan Case. See, too, Morrison, Workmen's Compensation and The Maritime Law (1929) 38 Yale L. J. 472, 497.

While there is no question of tort in the instant case, appellant's argument indicates that some significance is attached to the general rule that torts committed on navigable waters are within admiralty jurisdiction. But even though there is such jurisdiction, the local compensation act may nevertheless apply if the situation involves merely a local matter. See, Alaska Packers' Ass'n v. Industrial Accident Comm. (1928) 276 U. S. 467, 469, 48 S. Ct. 346, 72 L. Ed. 656; Grant

Smith-Porter Co. v. Rohde, 257 U. S. 469, 477–478, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008 (1922). In so far as the opinion in the Bishop Case may be susceptible to an opposite inference, it is in conflict with the Supreme Court decisions.

The distinction between the present case and Union Oil Co. v. Pillsbury (C. C. A.) 63 F.(2d) 925, decided this day, is sufficiently stated in the opinion in that case.

■ 2. Improperly admitted evidence.

The letter, set out in the margin,[1] received

[1] "Sunny Point Packing Company.
"Ketchikan, Alaska, July 28, 1926.
"Mrs. John Feigh,
"Port Blakely, Wash.
"Dear Mrs. Feigh:
"We were all shocked to learn that your husband was missing from his fish trap on Saturday morning last, and we have been much in hopes that definite news would be found whereby we could write you concerning him. It is a very sad duty to write you of such an unfortunate loss and every member of this company sympathizes with you and with the family in such an accident.
"The writer spent a day with Mr. Feigh at the time he left the cannery and proceeded to Black Island, the point at which the fish trap was located. Your husband was in excellent health and spirits and was well pleased with the kind of work and with the surroundings. He had neighbors on both sides, three men were located about one mile south on a fish trap nearby, belonging to a nearby cannery and this company also had another trap nearby. On the north side there were also three men on a similar trap. The trap which Mr. Feigh was to watch was a floating trap with a cabin located upon the trap in which he lived, and another cabin on the shore in which he was to have stayed in case of rough weather. We also maintained a patrol boat whose duty it was to patrol the three traps to the south as a protection from fish pirates, and of course, to help any of the watchmen who might call for their aid. In addition our cannery tenders called daily for the fish, and this together with the fact that there are many purse seine fishermen in this vicinity will give you the situation and show that it was not lonely nor cut off from communication.
"We can only surmise, of course, the details of the accident. Our watchman nearest to Mr. Feigh states that the storm was brewing for something over four hours and that he felt that it would be quite severe, and accordingly took the skiff and went ashore. He was about two miles from Mr. Feigh and in a rougher or more open place, he could see the trap, but could not see well enough to discern whether or not Mr. Feigh had also gone ashore. He presumed that Mr. Feigh had done so however, and at 9 o'clock in the morning when the blow had subsided, the patrol boat picked him and then proceeded to pick up Mr. Feigh. After finding that the skiff was gone, and that Mr. Feigh was not in the cabin on shore nor along the adjacent shore, they sent out a warning which resulted in our making a thorough search. It is evident that while Mr. Feigh left the trap in the skiff, that he failed to make the shore about 600 feet distant. The skiff has not been found. The cabin on the trap was washed off and altho found later there was nothing in it ·except some food stuffs, a mirror and a pair of spectacles. It was not broken up.
"The U. S. Government have since supplemented our search with a beach patrol which has covered all the nearby shores, and we hope we will have found the skiff.
"Capt. Ingelbretson, Capt. Manka and Jas. W. Hall all of whom are in charge of fish traps for us

by plaintiff, was admitted over defendant's objection. It was inclosed in an envelope, sent from Ketchikan, bearing defendant's name and containing defendant's check for Faigh's wages, with a statement of his earnings and the deductions therefrom for tobacco and other items.

On the objection, the court expressed a willingness to strike out objectionable portions, and only on counsel's refusal to designate them, admitted the entire letter. If, therefore, any part thereof is admissible, defendant will be deemed to have waived objections which might have been made to specific parts.

■ That the letter is only an unsigned carbon copy is obviously immaterial as it is the very document sent to plaintiff. The typewritten signature "Sunny Point Packing Co.," and beneath "Superintendent," adequately identified the author.

■ The only serious objection to its admissibility is that it contains much that is clearly hearsay. If, however, any statement contained therein was made within the scope of the superintendent's authority, the whole letter would, in view of the generality of defendant's objection, be admissible.

Clearly the superintendent had authority to send Faigh's wages and the statement of account to his wife; incidental thereto, he was authorized to explain the circumstances which made this unusual procedure necessary. We, therefore, agree with the court below that at least the opening statement of the letter, "your husband was missing from his fishtrap on Saturday morning," was within the scope of the superintendent's authority.

■ In any event the admission of the letter, even if erroneous, was not prejudicial for it added substantially nothing to the testimony of plaintiff's witnesses.

■■ 3. Failure to instruct the jury with respect to the law when the evidence as to death is circumstantial and with respect to presumptions of life and death.

Defendant had requested no instructions on these points. The court charged: "Under the pleadings and the evidence the sole is-

had varying experiences during this most unusual of storms, and we feel it most unfortunate that Mr. Feigh should have lost his life, with help and the safety of the shore but a few hundred feet away.

"As soon as the Government searchers return and if further evidences are found we shall write or wire you.

"With assurances of our deepest sympathy, we remain,

"Yours truly, Sunny Point Packing Co.,
"Superintendent."

sue before you for your determination is as to whether or not John C. Faigh met his death by reason of accident arising out of and in the course of his employment while in the employ of the defendant company, and it is incumbent upon the plaintiff to prove by a preponderance of evidence that he did so meet his death."

This instruction correctly stated the law. We cannot find that the court's failure to elaborate on the drawing of inferences from circumstantial evidence constituted reversible error, especially since defendant, although it excepted to the failure to give any instructions on this point, had requested none.

There was, of course, no question in the case as to the presumption of death after seven years absence.

■ Although it is often said that life is presumed to continue, it is well settled that this so-called presumption (cf. 5 Wigmore, Evidence [2d Ed. 1923] § 2531; see, too, Chafee, The Progress of the Law: Evidence [1922] 35 Harv. Law Rev. 302, 316, 317) is overcome when, as in the present case, the person is shown to have been exposed to a serious danger at or about the time of his disappearance. State Life Ins. Co. v. Sullivan (C. C. A. 9, 1932) 58 F.(2d) 741; Continental Life Ins. Co. v. Searing (C. C. A. 3, 1917) 240 F. 653. See Folk v. United States (C. C. A. 8, 1916) 233 F. 177, 189.

■ 4. Refusal to direct verdict for defendant.

Defendant's contention in this respect is plainly without merit. Cf. Brownlee v. Mutual Ben. Health & Accident Ass'n (C. C. A. 9, 1928) 29 F.(2d) 71.

■ 5. Allowance of $1,200 attorney's fees.

This allowance was evidently made by virtue of chapter 98, § 41, Session Laws of Alaska 1923, as amended by chapter 59, Session Laws 1925, which provides: "If the Court, before whom any proceedings are brought under this Act, determines that such proceedings have been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who has so brought, prosecuted, or defended them, including a reasonable attorney's fee to be fixed by the Court."

Defendant's contention that an express finding must evidence the court's determination that the proceedings were "defended without reasonable ground" cannot be sustained. There is no such statutory requirement, either express or implied. The allow-

ance by the court must be deemed to be the statutory determination.

In our judgment, however, the determination was erroneous. The contention that the admiralty law applied rather than the compensation act was, in the circumstances of this case, a reasonable, though not a valid, ground of defense. Examination of the Supreme Court decisions forcibly demonstrates the opportunities for reasonable differences of opinion which this phase of the law offers and has offered. See Morrison, Workmen's Compensation and The Maritime Law, op. cit. supra, at 497, 499; note (1926) 40 Harv. L. Rev. 485. As illustrating the difficulties which arise in applying the law, compare the instant case with Union Oil Co. v. Pillsbury (C. C. A.) 63 F.(2d) 925, decided this day; compare, also, dissents in Baizley Iron Works v. Span (1930) 281 U. S. 222, 50 S. Ct. 306, 74 L. Ed. 819 and Employers' Liability Assurance Corp. v. Cook (1930) 281 U. S. 233, 50 S. Ct. 308, 74 L. Ed. 823, with majority opinions in those cases; cf. Span and Cook Cases with Grant Smith-Porter Co. v. Rohde (1922) 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, see Spencer Kellogg & Sons, Inc., v. Hicks (1932) 285 U. S. 502, 513, 52 S. Ct. 450, 76 L. Ed. 903, with which compare opinion of Circuit Court of Appeals, 52 F.(2d) 129, 133.

6. Allowance of interest.

While the 1923 Workmen's Compensation Act has no provision in respect to interest, the general laws (section 684, Compiled Laws of Alaska 1913) provide that "the rate of interest in the District shall be eight per centum per annum, and no more, on all moneys after the same become due."

There is some indication in the Compensation Act of 1923 that interest was contemplated. It provides that an employer may, in the event of a claim for compensation, deposit in court $7,800 (maximum recoverable under the act) or a bond therefor, and if thereafter judgment is entered against him "the amount to which each, any and all claimants shall be so adjudged to be entitled shall be paid to such claimant or claimants out of the sum so deposited without costs and without the allowance of interest thereon." Chapter 98, § 17, Session Laws 1923. From the express provision denying interest in such a case, it may fairly be inferred that interest is to be allowed in other cases.

In other jurisdictions, in which workmen's compensation acts have no provision with respect to interest, the general interest statute has been applied. Nester v. II. Korn Baking Co. (1922) 194 Iowa 1270, 190 N. W. 949; cf. Garcia v. Salmen Brick & Lumber Co. (1922) 151 La. 784, 92 So. 335; Black v. Louisiana Cent. Lumber Co. (1926) 161 La. 889, 109 So. 538; Harris v. Long Bell Lumber Co. (1931) 17 La. App. 52, 135 So. 246; Huval v. Sexton Corp. (1932) 19 La. App. 198, 139 So. 739; see, too, 2 Schneider, Workmen's Compensation Laws (2d Ed. 1932), § 575. We have been referred to and have found no case inconsistent with this practice. A similar construction should be given to the laws of Alaska.

Appellant urges that the amendment of 1927 (chapter 77, § 3, Session Laws 1927), providing that interest in compensation cases shall commence six months after injury, negatives a right to interest before judgment under the earlier statutes. But it could as well be urged that it affirms a right to interest under the earlier statutes from the date of the accident, which by virtue of the amendment is reduced by the six months' period. It is thus apparent that the 1927 amendment throws no light on the earlier law.

Judgment reduced by $1,200, and as modified affirmed.