## MANCARI v. FRANK P. SMITH, Inc.

### No. 7452.

United States Court of Appeals for the District of Columbia.

Decided Aug. 5, 1940.

Jos. C. Turco and Jesse H. Chessin, both of Washington, D. C., for appellant.

Charles V. Imlay and John R. Reed, both of Washington, D. C., for appellee.

Submitted to STEPHENS, EDGERTON and RUTLEDGE, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment of the District Court of the United States for the District of Columbia entered upon a verdict directed for the appellee at the close of the appellant's case. Hereafter we refer to the appellant as plaintiff and to the appellee as defendant.

The plaintiff sued upon an alleged violation of his right of privacy. His complaint charged that the defendant Frank P. Smith, Inc., was engaged in business in the District of Columbia, and that for commercial and advertising purposes, and wrongfully and maliciously and without the plaintiff's knowledge or consent, it caused to be published in the District of Columbia a so-called advertising "tear sheet" in the form of the following purported newspaper article:

"Salvatore Mancari is Missing—Wide Search being Made

"Frank P. Smith, Inc., Offers Reward for Producing Valued Prospect

"One of the most intensive manhunts in years was instituted today by Frank P. Smith, Inc., in an effort to solve a mysterious disappearance that has baffled the organization for months.

"Today's bold step climaxes a long series of attempts to locate this missing man and discover some reason for his continued absence. The announcement of a worth-while

reward in the nature of substantial savings on the kind of shoes he wears will do much, we believe, to bring about his return and solve the mystery.

"Representatives of Frank P. Smith, Inc., were confident they could find their man, they honestly believe that once a man enjoys the style, fit, comfort and longer wear of 'Foot-Joy,' the shoe that's different, he will wear them again—in fact there is no fairer test of 'Foot-Joy's' economy than to compare the low cost of wear per day with that of many shoes in America.

"Men who have worn 'Foot-Joy' know what a value they are at their regular price; they will be quick to take advantage of the present price before the increase. They know the quality is unchanged, they realize they are getting superior materials and workmanship that have built 'the shoe that's different,' they realize that 'Foot-Joy's' give them absolute comfort—that different feeling. When a man has once been fitted properly with 'Foot-Joy's' he will wear them on all occasions.

"Wanted!

"Reward Offered for Producing
Salvatore Mancari

"We want this man; he's too valuable to lose! When last seen he was wearing a pair of shoes and apparently well pleased. When found he probably will still be wearing them! If he will make his first visit to the Frank P. Smith, Inc., a substantial reward in foot comfort awaits him. See details below.

*       *       *"

The plaintiff charged that as a result of the publication of this material, he suffered mortification and humiliation—and for this he prayed damages. [1]

The defendant demurred to the plaintiff's complaint, but the demurrer was overruled. The defendant abided this ruling and entered three pleas. In the first of these it admitted that it was engaged in business in the District of Columbia, as alleged in the complaint; it denied each and every other allegation made in the complaint. In the second plea the defendant averred that: The defendant was a retailer of shoes, including "Foot-Joy" shoes manufactured by Field and Flint Company of Brockton, Massachusetts, and purchased outright by the defendant and held for sale on its own account and risk. Field and Flint Company, the manufacturer, had entered into an advertising contract with the Reuben H. Donnelley Corporation of New York, whereby the latter agreed to issue in behalf of the former advertising matter of the kind described in the plaintiff's complaint, with the names of prospective customers inserted by rubber stamp, this matter to be mailed by the Donnelley Corporation to prospective customers in Washington and elsewhere, these to be selected by the Donnelley Corporation itself. The defendant was not a party to this agreement, and had no knowledge until after the fact that such advertising matter had been sent to the plaintiff or to any other person. The defendant never authorized either Field and Flint Company or the Donnelley Corporation to act in the defendant's behalf in respect of this advertising. The third plea set up matter not material to the question involved in this appeal.

On the issues thus joined, the case went to trial before a jury. By Frances Mancari (the plaintiff's wife), and corroborating witnesses, the plaintiff proved that Mrs. Mancari had received through the mail, addressed to the plaintiff, the purported newspaper item, and that she had had it read to her—not herself readily reading English. Evidence was introduced on the subject of damages also. To prove that the defendant was responsible for the publication of the "tear sheet," the plaintiff introduced in evidence the "tear sheet" itself, pointing to the presence therein of the defendant's name. No other evidence was offered.

At the close of the plaintiff's case, the defendant moved for a directed verdict upon the ground that the evidence introduced failed to prove that the defendant was responsible for the publication of the article. The plaintiff urged that the presence of the defendant's name in the body of the advertisement was sufficient to raise a presumption of authorship and to take the case to the jury. The court granted the defendant's motion and directed a verdict. This appeal was then taken.

---

[1] According to the record and briefs there was a second count in the plaintiff's complaint charging libel through publication of the "tear sheet." To this count a demurrer was sustained. The count, however, does not appear in the record and no point is made concerning it on this appeal.

The ruling of the trial court that the evidence was insufficient to warrant submitting the case to the jury was correct. The mere presence in printed material of the name of a particular person constitutes no substantial evidence that that person caused such material to be written or published. Saenger Amusement Co. v. Murray, 1922, 128 Miss. 782, 91 So. 459; 4 Wigmore, Evidence (2d ed. 1923) § 2150. In the case cited Murray sued the Amusement Company for personal injuries charged to have been caused by the negligence of the Amusement Company as his employer. It was shown that at the time of his injury, in September 1919, Murray was employed as a janitor in the Lomo Theater, a moving picture house in Hattiesburg, Tennessee. To prove that this theater was operated by the Amusement Company and that he was accordingly its employee, Murray offered in evidence September issues of a newspaper, the Hattiesburg American, containing advertisements of moving picture attractions to appear in the Lomo Theater. That portion of the advertisements relied upon to show that the Amusement Company operated the Lomo Theater was in the following terms:

"Saenger Amusement Company presents today at Lomo Theater," etc. "Saenger's Lomo Theater." "Saenger's Lomo Theater, Progressive Amusements, Progressive People. Saenger Amusement Company presents Evelyn Nesbitt."

As in the instant case, no other evidence was offered that the defendant company had any connection with the publishing of the advertisements. Over the objection of the Amusement Company they were received in evidence. On an appeal by the company from a judgment rendered against it, the admission of the evidence was held erroneous as constituting no proof. The Supreme Court of Mississippi said:

"We are of the opinion that these advertisements proved nothing except the fact that they appeared in the newspaper in question. For aught that appears to the contrary, they may have been wholly unauthorized by appellant, or appellant may have furnished to the management of the Lomo Theater, by rental or otherwise, the picture reels which were being used therein, without having any control or interest whatever in the business, or appellant may have rented such reels to the management of said picture show, and as a part of the consideration for such rental authorized and paid for said advertisements. The advertisements utterly fail to establish the vital fact that appellee at the time of his injury was an employee of appellant by virtue of the alleged ownership or control by appellant of the said Lomo Theater. Therefore these newspaper advertisements, standing alone, should have been excluded by the trial court." [128 Miss. at 790, 91 So. at 461] Wigmore, cit. supra, states:

"Printed matter in general bears upon itself no marks of authorship other than contents. But there is ordinarily no necessity for resting upon such evidence, since the responsibility for printed matter, under the substantive law, usually arises from the act of causing publication, not merely of writing, and hence there is usually available as much evidence of the act of printing or of handing to a printer as there would be of any other act, such as chopping a tree or building a fence. There is therefore no judicial sanction for considering the contents alone as sufficient evidence." [4 Wigmore, Evidence (2d ed. 1923) § 2150]

The plaintiff relies upon Equitable Life Assur. Soc. v. MacDonald, 9 Cir., 1938, 96 F.2d 437, certiorari denied, 1938, 305 U.S. 624, 59 S.Ct. 86, 83 L.Ed. 399; Metropolitan Life Ins. Co. v. Goodwin, 4 Cir., 1937, 92 F.2d 274; Eley v. Gamble, 4 Cir., 1935, 75 F.2d 171; Sunny Point Packing Co. v. Faigh, 9 Cir., 1933, 63 F.2d 921; Malouff v. Pope, 8 Cir., 1925, 9 F.2d 254; Fire Ass'n of Philadelphia v. Mechlowitz, 2 Cir., 1920, 266 F. 322, 324; National Acc. Soc. v. Spiro, 6 Cir., 1897, 78 F. 774, certiorari denied, 1897, 168 U.S. 708, 18 S.Ct. 944, 42 L.Ed. 1211; Scofield v. Parlin & Orendorff Co., 7 Cir., 1894, 61 F. 804; Spooner v. Daniels, C.C.S.D.N.Y., 1854, Fed.Cas.No.13,244a, 22 Fed.Cas. 934; Dunn v Hearst, 1903, 139 Cal. 239, 73 P. 138. We find nothing in any of these cases to support the plaintiff's position:

Dunn v. Hearst merely sustains as correct an instruction to a jury that a newspaper proprietor is responsible for a libel even if the same is published in his absence and without his knowledge by an employee of the paper. Eley v. Gamble holds that on an issue of stock ownership the books of a bank are *prima facie* correct, and that identity of person is presumed from identity of names. Fire Ass'n of Philadelphia v. Mechlowitz is cited for language to the effect that evidence not contradicted either by direct evidence or by legitimate inferences

and not improbable and surprising or suspicious is to be given conclusive effect. This begs the question as to what constitutes evidence. Spooner v. Daniels merely sustains an instruction that authorship of a libel may be proved either by direct positive testimony or by circumstantial evidence. Metropolitan Life Ins. Co. v. Goodwin is cited for the following:

"...It is a rule of the substantive law declaring that for procedural purposes a certain prima facie probative force will and shall (until evidence sufficient to prove the contrary is introduced) be provisionally attached to a given state of facts; that is, a certain inference shall be drawn from it, unless and until evidence sufficient to prove the contrary has been introduced." [92 F.2d at 276]

The case, however, involved a statutory presumption of death flowing from seven years absence. There are in some jurisdictions statutes providing that printed matter purporting to be published by a given person shall constitute evidence of publication by that person. See Wigmore, op. cit. supra, § 2150, footnote 3. There is no such statute in the District of Columbia. Equitable Life Assur. Soc. v. MacDonald is cited for language said to embody the law concerning the function and effect of presumptions. In Scofield v. Parlin & Orendorff Co., letters purporting to be signed by the defendant were admitted against it, but the letters were written upon what purported to be the letterhead of the defendant, were dated at the defendant's place of business, were received in the regular course of correspondence, and in their contents referred to the subject of dispute between the parties. In National Acc. Soc. v. Spiro, a letter was admitted against the defendant corporation without direct proof that it had been written by the same; but the letter was written on what purported to be the business letterhead of the company, contained the facsimile signature of an officer, and was shown to have been received in reply to one addressed to the company. In Malouff v. Pope, a bankrupt's discharge was objected to upon the ground that he had obtained merchandise from a creditor upon a materially false statement in writing made for the purpose of obtaining credit. Such a statement, purporting to be signed by the bankrupt, was received in evidence against him. But in addition to the purported signature there was evidence that when he applied for the purchase of goods, the bankrupt was given a blank form of financial statement used by the creditor when new customers desired to obtain goods on credit, and was informed that it was necessary for him to fill this out and sign it and mail it to the creditor before the goods could be shipped. This the bankrupt promised to do. Within a few days the creditor received a written order for the goods desired, and also the written statement introduced in evidence purporting to be signed by the bankrupt. It was made out on the form of blank that had been given to him. This evidence was held to warrant the denial of the discharge. In Sunny Point Packing Co. v. Faigh, it was held that a letter was sufficiently identified to bind the Packing Company when it had been received through the mails from the place of business of the company, described the death or disappearance of the husband of the recipient, mentioned the husband as an employee, and contained a check for the husband's wages and a statement of his earnings and deductions. The circumstantial proof warranting receipt of the items in the four cases last mentioned has no parallel in the instant case.

By nothing in this opinion are we to be taken to rule upon the question whether a cause of action was stated in the complaint.

Affirmed.

RUTLEDGE, Associate Justice (dissenting).

Assuming that a cause of action was stated, as to which I express no opinion, I think the evidence was sufficient to put the defendant to proof of its denial of publication.

The rule that the contents of a document, purporting to be a particular person's, are not of themselves sufficient evidence of genuineness, is based on two principles: (1) that other, and better, evidence generally is available to prove authorship; (2) the danger that "too many would be found to take fraudulent advantage of this rule." 4 Wigmore, Evidence (2d ed. 1923) § 2148. But, as to the latter, there is also "danger of abuse in the opposite direction" (Id., § 2149) and, as to the former, there are situations in which other evidence is not available. In such a case, the first reason for the rule fails, and the contents become the best, in fact the only available, evidence of authorship. When this is true, evidence that the defendant did not publish the docu-

838

ment generally would be within his peculiar knowledge and the situation, therefore, such as to require him to come forward with it. The rule is not invariable and in special circumstances the contents may be used as evidence of authorship or publication, particularly when they relate to other facts which, when admitted or proved, serve to identify the person named in the document as author. Cf. 4 Wigmore, Evidence (2d ed. 1923) §§ 2148-2150.

In the case of printed matter, the document itself generally contains no evidence of authorship other than its contents. Nothing in the record shows that the "tear sheet" contained a printer's label or any other means of identifying the printer, and through him the author. The article contained not only defendant's name, repeated in four places, but advertising solicitation for "Foot-Joy" shoes, together with specific mention of the plaintiff as prospective customer. It therefore identified defendant by name, by the general description of his business, by reference to the particular product in which he dealt, and it solicited business for the defendant and for that product. There was no indication of the manufacturer's identity or that the advertisement was issued by the manufacturer. The clear inference from the contents was that the defendant mailed the sheet. Nine out of ten persons, and possibly the tenth, on receiving such a document through the mails would assume that defendant had sent it. Furthermore, these facts were verified by statements in defendant's plea, which we may consider insofar as they are admissions, though we may not consider his denials. Defendant admits that it was engaged in retailing shoes in Washington and that "Foot-Joy" shoes were sold by it. To this extent its plea bears out the identification of defendant by the contents of the tear sheet, and made unnecessary production of proof by plaintiff to establish these facts. When the verdict was directed, therefore, the evidence, together with admissions in the pleadings, had established that defendant was a retail shoe dealer in Washington, selling "Foot-Joy" shoes, and that the tear sheet advertising this product and soliciting trade in it at defendant's store was sent through the mails and received at the intended address. Furthermore, there was nothing in the contents or in the advertising matter to indicate that another person was interested in the business, the product, the advertising, or having it distributed.

Under these circumstances, the natural and normal inference is that the sheet was mailed by the defendant. It is not customary or usual for strangers to advertise gratuitously another's business or product in a manner which involves, as this did, very considerable expense. According to common experience, that is done generally by the owner or by another at his procurement. "National advertising" is an apparent exception, but the usual manner in which that is done is by indicating—and emphasizing— the name of the manufacturer, with or without the local dealer's name. Unless the mere mention of "Foot-Joy" shoes in the sheet, which did not mention or purport to be made on behalf of the manufacturer or anyone other than the defendant, can be taken as rebutting the clear inference created by the entire remaining contents and admitted facts, that inference would appear to be, if not the only, certainly a reasonable, one to make from them. If it was reasonable, the jury should have been allowed to make or refuse to make it, providing defendant did not succeed in rebutting it by his proof.

In Saenger Amusement Co. v. Murray, 1922, 128 Miss. 782, 91 So. 459, relied upon by the majority, several inferences were possible, equally consistent with that which the plaintiff insisted the jury should be permitted to draw. The decision held that the advertisement could not be admitted to prove that plaintiff was an employee of defendant, not that its contents did not prove authorship.

In my opinion, the judgment should be reversed and the cause remanded for further proceedings.