THOMPSON, J.
The plaintiffs, as parents, instituted this suit against the Salmen Brick & Lumber Company, Ltd., for damages on account of the death of their 17 year old son, Frank Garcia, who was killed on April 18, 1919, while at work for the defendant at its brick and tile factory, in the town of Slidell. The suit is brought under article 2315 of Revised Civil Code, with the alternative demand for compensation under the Employers’ Liability Act (Laws 1914, No. 20), in the event it should be held that the plaintiffs were not entitled to recover damages. On a trial of the case in the court below, the demand for damages was rejected, but plaintiffs were awarded a judgment in accordance with the provisions of the compensation statute. The plaintiffs have appealed.
The evidence shows that, up to and including the day immediately preceding that on which the plaintiffs’ son was killed,- he was an employee of the defendant company, with the consent, approval, and acquiescence of his parents and who received from him all of the wages that were paid him for his work. The young man had been employed at the factory off and on for about a year, and had performed different kinds of work about the mill. He had worked at the planer, at loading dollies with lumber, to be put in the plant to be dressed and was. familiar with the factory and mill plant .in a general way. When his employment began there was no specific agreement as to the character of work he should be assigned to. The plaintiffs made no objection to the kind of work the young man was engaged in prior to the day on which he was killed, and they never at any time informed the defendant in writing or otherwise that the provisions of the Compensation Act should not apply to the contract of employment of their son. It is admitted by plaintiffs’ counsel that, If the plaintiffs’ son had been killed on the day before that on which he was killed or at any time prior thereto, which under his contract of employment and in the course of his employment, that plaintiffs would have had no right of action on account of such death, except as granted by the compensation statute.
On the day before young Garcia was killed and probably for several days prior thereto, he was engaged it# rolling brick bats in a wheelbarrow at the dry press, and placing or dumping them onto a moving belt, by which they were conveyed to the place where they were ground up. This work was attended with but little, if any, peril or danger, and it is contended, on behalf of plaintiffs, that, on the morning of the accident, the defendant, without their knowledge and consent and against the protest of Mrs. Garda took the young man, who was immature and inexperienced, away from the work he had theretofore been doing and put him to work on the transfer cars, a position ultra-hazardous, even to a person of mature years, and of ripe experience; that this action of the defendant was gross and criminal neg *787 ligence and had the legal effect of canceling and terminating the contract of employment and that the defendant, by reason of such gross negligence and violation of its contract, cannot be permitted to plead the compensation statute as a shield and protection against liability for damages as in case of tort.
It appears that the transfer, on which young Garcia lost his life, is a flat car on wheels, which moves on a railway track between the dry kiln and the burning kiln and is used to transfer brick and other material from the one place to the other. There are large stakes or standards placed uprightly on the sides of the car. The car is pushed onto the track by hand and then moved by electric power over the track to its destination, where it is pushed off of the track by hand. The workman, who is engaged in pushing the ear on and off the track, rides on the transfer car. The track on which the car moves is laid close to the walls of the brick kiln, and the space between the side of the car and the walls is 4% inches. On the morning of the accident, the regular workman on this transfer failed to report for work, and young Garcia, with no objection on his part, was assigned by the defendants’ foreman to*take the place of the absent workman for that day. The placing of young Garcia at this work was not done by the foreman personally but through one Dawes, a young man about the age of Garcia, and who was in charge of the operation of the transfer. Dawes, as a witness, testified that he instructed young Garcia as to the position he should occupy when riding on the car, and warned him of the dangers to be encountered and the chances of being injured or killed, if he did not keep the por sition as pointed out to him. On the first trip Garcia took his position on the side of the car by one of the standards, with his body extending partially beyond the edge of the car. He was facing the direction from whence the car was moving and ha'd hi® back towards the line of walls the car w'iis> to pass. I-Ie was caught between the first;" wall and the standard on the car and was crushed to death.
[1, 2] If the case were governed by the law and jurisprudence applicable to the relation of master and servant, we would feel constrained to hold the defendant liable in damages for the death of young Garcia. He was young and with no experience in the operation of the transfer ears. It was an act of negligence on the part of the defendant in changing him from a position of little or no danger to a place of unusual and extraordinary risk and peril. The instruction and warning which young Dawes claims to have given him was not sufficient and did not meet the requirements of the law. Nor do we think that the defendant could have been relieved under its plea of contributory negligence under the facts and circumstances as shown by the record. The case however clearly comes under the Employers’ Liability Act. As before stated, the young man was employed with the knowledge, consent, and approval of his parents to work about the defendant’s factory. There had been no special agreement as to the particular work the employee was to perform. The relation of employer and employee had not been terminated at the time of the accident. The mere transfer from one position of labor to that of another did not have the effect of abrogating the contract. The presumption is that the contract is to be governed by the act regulating the rights and remedies of the employer and employee, in the absence of any agreement or notice to the contrary. It may be conceded that, if young Garcia had been employed under a contract stipulating and defining the character and kind of work he was engaged to perform and his employer had takerv him away from that particular work and assigned him to a position of greater risk and per *789 il, without the consent of his parents, there might be (we do not say there would be) considerable force in plaintiffs’ contention. But that is not the case here. The young man had worked in different positions about the mill, with no objection on the part of plaintiffs. It is true, the plaintiff, Mrs. Garcia, requested young Dawes on several different occasions not to permit her son to work on the transfer, as she considered such work very dangerous. But such a request, or protest if you may call it such, was not sufficient to amount to a restriction or limitation of the contract of employment. It could not be said to be even a notice to the defendant; Dawes himself held a subordinate position as a laborer. He had no authority to employ laborers, nor to determine the character of work they should perform. Notice to him could not be said to be notice to the defendant. The business in which the defendant was engaged is recognized by the statute as being hazardous, and any person employed to perform any labor of any character about the mill is brought within the terms of the statute, and may be said to be engaged in a hazardous occupation. There can be no comparative or relative degrees of danger or hazard in any business, trade, or occupation designated in the statute. The work about the defendants’ factory, within the meaning and purpose of the statute, cannot be classed as dangerous and extradangerous — hazardous or ultrahazardous. And even though the plaintiffs’ son was transferred from a place of comparative safety to one beset with extreme danger, he nevertheless was defendant’s employee and was when he was killed, “performing services arising out of and incidental to his employment in the course of his employer’s trade, business, and occupation.”
[3,4] Therefore, while the act of defendant, in changing the position of young Garcia in the manner as was done, without giving him proper instruction and warning, may, under the general rule and jurisprudence relating to master and servant, be regarded as an act of negligence, it cannot be so considered under the compensation statute. Under that statute the liability of an employer is not to be determined by negligence or want of negligence. ■ Our conclusion is that the case was correctly decided by the lower court. The defendant has answered the appeal, and asks that the judgment be amended by striking out the allowance of interest on the accrued payments. In the twenty-first paragraph of plaintiffs’ petition it is alleged that petitioners made demand on defendant within ten days after the death of their son “but that defendant neglects and refuses to pay petitioners.” The answer admits that demand was made for compensation, and admits that they did not agree on the amount, and asks the court to fix the amount of compensation at $9.07 per week for 300 weeks. It appears that defendant was willing to pay, but never offered to pay. Under the circumstances, interest was properly allowed.
For the reasons assigned, the judgment appealed from is affirmed, at defendant’s cost in both courts.
Decree amended, by condemning the appellant to pay the costs of appeal, and rehearing refused by the WHOLE COURT.