No. 10,388

CONAWAY AND CLARK v. MARINE OIL
CO., LTD.

(March 1, 1926, Opinion and Decree.)
(March 15, 1926, Rehearing Refused.)
(November 3, 1926, Affirmed by Supreme
Court on Writs of Certiorari and Review.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant
   Par. 158.**

Under the compensation law of this state, an injured workman can only recover compensation for disability and his dependents for death due to injuries arising out of and in the course of his employment. It is not sufficient that such disability or death occur in the course of the employment.

2. **Louisiana Digest—Master and Servant
   —Par. 158.**

Where an employee of a gasoline and oil filling station is killed in the accidental discharge of a revolver in the hands of a fellow servant, his dependents cannot recover under the compensation law of this state, particularly where it is not contended that the revolver accidentally discharged was the property of defendant and kept on the premises for protection and possible use in defense of defendant's property.

Appeal from Civil District Court for the Parish of Orleans, Division "A", Hon. H. C. Cage, Judge.

Action by John Conaway, individually and to aid, authorize and assist his wife, Mrs. Lilly Clark, against Marine Oil Company, Ltd.

There was judgment for defendant and plaintiffs appealed.

Judgment affirmed.

H. A. Moise, of New Orleans, attorney for plaintiffs, appellants.

E. R. Mabry, of New Orleans, attorney for defendant, appellee.

OPINION

WESTERFIELD, J. Plaintiffs, the father and mother respectively of a deceased son, bring this action under the Employers' Liability Act for compensation for the accidental death of their said son.

From a judgment maintaining an exception of no cause of action, plaintiffs have appealed.

It is alleged that petitioner's son was employed at a gasoline oil filling station

conducted by defendant and that while engaged in "blowing up" a tire for a patron of said oil station he was killed by a shot from a revolver which was accidentally discharged by a fellow workman.

The contention of defendant is, first, that plaintiff's son, whom we shall hereafter call Conaway, was not engaged in a hazardous occupation, and, secondly, that the fatal injury to the employee did not arise out of his employment.

As stated by this court and quoted with approval by the Supreme Court in the case of Benjamin vs. Standard Accident Ins. Co., 152 La. 878, 94 South. 428, "Under the Employers' Liability Act", there are two classes of occupations that are protected. They are those that are denominated as "hazardous" in Section 1, par. 2 (a) of the Act, and those that are made so by agreement of the parties or by judgment of a court in both cases prior to the accident, 14 Court of App. 230, Dejan vs. Ujiffy, and Anderson vs. Tharp, No. 7373 Ct. App. The law was never intended to protect employer of employee in an occupation not hazardous, because in the absence of danger they needed no protection.

There is no question here of any agreement of parties or judgment of court pronouncing Conaway's occupation hazardous, consequently we turn to Sec. 1, par. 2 (a) of the Act to determine whether there is any occupation there enumerated which might embrace the employment we are considering here. We find the following among other descriptions of hazardous employment in the section referred to:

"Any occupation entailing the manufacture, transportation, care of, use of, or regular proximity to dangerous quantities of gun powder, dynamite, nitro gylcerine, and other like dangerous explosives."

It might well be doubted whether gasoline can be classed with gun powder and nitro glycerine, as a "like explosive", but in the spirit of liberal construction in the interest of the employee, which courts have always construed the compensation law, we are inclined to the opinion that Conaway's occupation can be considered as embraced by the provision we have quoted.

Did the unfortunate accident "arise out of and in the course of" Conaway's occupation is the next consideration?

There can be no question that it occurred "in the course of", but it must also have arisen "out of" his occupation. Plaintiffs' counsel frankly states his position to be that all injuries received "in the course of" an employee's occupation necessarily arise "out of" such occupation. He argues that any other view of the compensation law restores the defenses of assumption of the risk of employment and negligence of a fellow servant expressly repudiated by the act, citing Ferguson vs. Kody-McFarland Gravel Company, 156 La. 874, 101 South. 248, where it was said:

"The moment we begin to indulge in hair-splitting distinctions in cases of this kind, that moment we approach the danger line of reading into the statute the defenses that the employee assumes the risk of his employment, a defense which the employer is expressly prohibited from urging under the Employers' Liability Act against a claim for compensation by a workman. Act 38 of 1918, Paragraph 4. Whether the employer, the employee or the fellow employee is guilty of negligence or not is immaterial, so far as liability of the employer is concerned. Garcia vs. Salmen Brick & Lumber Company, 151 La. 784, 92 South. 335."

We are aware of the quasi parental attitude of the law towards injured workmen and have had occasion ourselves to give expression to views in consonance

with the current of authority to this effect, but it must be remembered that there are limits to the most liberal construction beyond which courts cannot go without just criticism.

Our law, like that of most of the states, as well as the English law, makes compensation for disability or death resulting from accident to employees depend upon the condition that the accident shall have arisen, "out of and in the course of" the employment. Some of the states, for example, North Dakota, Ohio, Pennsylvania, Texas, Utah and West Virginia, as well as the Federal Act, provide only that the accident shall arise "in the course of employment". Wyoming uses the phrase, "injured in hazardous employment", and Wisconsin, "growing out of and incidental to the employment". See Scneider's Workmen's Compensation Law, Vol. I, p. 262.

In such jurisdictions, therefore, as have chosen to do so, it is provided that workmen may recover for all injuries received in the course of their employment, but in Louisiana it is otherwise, and the injury must "arise out of" as well as "in the course of" such employment. This much is clear and suffices to dispose of the broad contention of counsel, but the application of our law and the interpretation of the phrase, "out of and in the course of", is not so clear. The principal difficulty is with the words "out of", for it is comparatively easy to determine what injuries are received in the course of an employee's occupation. In a Massachusetts case, 102 N. E. 697, the Supreme Court of that state said:

"An injury may be said to arise out of the employment when there is apparent to the rational mind upon consideration of all circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment; then it "arises out of" the employment, but it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not to have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

Our Supreme Court has said (Meyers vs. La. Ry. and Nav. Co., 140 La. 937, 74 South. 256):

"The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."

In Dyer vs. Rapides Lumber Co., 154 La. 1091, 98 South. 677, it was held that an engineer who was shot by an unknown party, while firing his engine at night, in a lonely spot in the woods, could recover because:

"We think that where a workman is exposed to some risk manifestly necessitated by his employment he is entitled to his compensation, unless it be also manifest that he would at the time of the occurrence have been qually exposed to the same risk outside of his employment. And we cannot assume that a man is exposed to the same danger of attack at his own home or in some frequented place, or in the day-

time, as he would be when called by his employment to some lonely spot and in the night time."

In Ferguson vs. Kody-McFarlane Gravel Co., 156 La. 871, 101 South. 248, plaintiff, a track employee, was struck on the head with an iron instrument by a fellow employee. His injury was held to be compensable because:

"As the statute expressly makes the employer liable, even when the injury occurs through the tort of a third person, for the stronger reasons the employer should be held liable when the injury results from the tort of a fellow employee, as the employer and his employees have contracted among themselves, to come under the terms of the Employers' Liability Act, a statute essentially intended to provide insurance for the employee against 'all the risks to which he may be exposed by his employment'."

In the case at bar, Conaway was shot in the course of his employment by a careless fellow servant. There is no casual relation between the source of his injury and the character of his employment. Conaway's duties did not expose him to the danger of accidental shooting, nor is there any allegation that the revolver from which the shot was fired belonged to Conaway's employer and was kept on the premises for protection and possible use in defense of defendant's property. We cannot say that there was any feature of Conaway's employment which was a contributing or proximate cause of his injury. It was no more to be expected that Conaway would be shot while at work in the manner alleged and by a careless fellow servant than that he should be similarly injured at home by a member of his family. It happened that he was shot while at work. He was not more exposed to such injury while at work than otherwise and elsewhere. That it should so happen was providential. To look for a cause is to attempt to solve the riddle of the universe or fathom the inscrutable ways of Providence which are "past all finding out". In any event, we are convinced that Conaway's injury and resulting death did not arise "out of" his employment, consequently, the judgment appealed from must be and it is hereby affirmed.