**KEYHEA v. WOODARD–WALKER LUMBER CO., Inc.**

No. 4467.

Court of Appeal of Louisiana.
Second Circuit.
April 28, 1933.

Percy E. Brown, of Arcadia, for plaintiff.

J. Rush Wimberly, of Arcadia, for defendant.

TALIAFERRO, Judge.

Shelby Keyhea, an employee of defendant, was shot and killed on May 5, 1930, by one Lee Williams, section foreman on defendant's log railroad. His duties required him to hook large metal tongs to logs to be lifted onto cars on the railway track. The morning of the day on which he was killed, deceased and other laborers, were conveyed to the place where the logs were to be loaded on the cars by defendant's train, consisting of locomotive, tender, and empty cars, and, when the loading had been completed, deceased, in keeping with the rule and custom, accompanied the train on its return trip towards defendant's mill. He was riding in front of the locomotive on the cowcatcher with a co-laborer. When some four miles from the mill, he was shot by Williams, who stood on the ground beside the track.

The evidence is to one accord as to the facts of the killing. Deceased was unarmed, had made no hostile demonstration towards Williams, in fact, so far as the evidence discloses, he was unaware of Williams' presence until the first shot was fired. Two shots were fired

at deceased while on the train, and two were fired at him after he had jumped from the train endeavoring to escape his assailant.

Deceased was legally married to Lizzie Keyhea on May 31, 1926. One child, Onita, 4 years old, is the only issue of the union. The widow, in her own behalf, and as natural tutrix of the minor, instituted this suit to recover compensation at the rate of $8.32 per week for 300 weeks, or 46¼ per cent. of the weekly wages of deceased. Dependence on deceased for support is alleged. There is no allegation in the petition that Keyhea and plaintiff were living together when he was killed. It is a fact, admitted by both sides, that they were then estranged and had been living apart since January 23, 1930, excepting intermittent visits (mostly at night) by him to her living place, during the month before his death.

In its answer, defendant incorporated an exception to the right and capacity of plaintiff to institute the suit and stand in judgment for her minor child. The plea was tried and overruled. It is not urged in this court, and evidently has been abandoned.

Defendant resists this suit on the following grounds:

(1) That plaintiff, the widow, was living apart from deceased when he was killed, and not dependent upon him for support.

(2) That, when killed, deceased was not acting in the scope of his employment, and he was not then performing services arising out of and incidental to his employment in the course of his employer's business.

(3) That deceased met death because of his own wanton and unlawful act, telling Williams as he (Keyhea) left for work in the morning that he would kill him when he returned and to be ready.

The lower court gave judgment in favor of the minor child, but rejected the demand of the widow. She and defendant appealed.

In this court defendant filed an exception of no cause and no right of action on the ground that plaintiff's petition does not allege that she was living with deceased at time of his death.

A wife living with her husband at time of his death is conclusively presumed to be wholly and actually dependent upon him. Section 8, subsec. 2 (A and B), Act No. 20 of 1914, as amended by Act No. 242 of 1928. If they are in fact separated, living apart, the presumption of dependence is not applicable, and that question becomes one of fact. Subsection 2 (D) of the above-cited act, after declaring who are conclusively presumed to be dependents of the deceased employee, says: "In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death."

It would hardly be contended that a wife, wholly dependent upon her husband for support, who had been, without cause, put aside by him and forced to leave the matrimonial domicile, could not recover compensation for his death. She would be required to prove her dependence on him for support, whereas, if living with him when killed, no such proof is necessary, as the legal presumption operates as conclusive proof in her favor. Gregory v. Standard Oil Co., 151 La. 228, 91 So. 717.

The exception is not well founded, and is overruled.

When plaintiff and deceased separated, he took their child with him. Plaintiff lived with her mother and stepfather after the separation. She testified, and it is not contradicted, that he lived in open adultery in the mill quarters with another woman from the time of the separation until he left the community the latter part of February, and that she was "put out" by deceased because of this woman.

One witness testified that he saw plaintiff in the act of adultery with Lee Williams in December, before the separation occurred. He denied that he informed the deceased, or any other person, of this transaction.

It is well established that in the morning before the homicide occurred deceased told Lee Williams to be ready when he returned that afternoon as he was going to kill him. None of the witnesses who heard this threat knew what the trouble was between the parties; at least they denied any knowledge on the subject. Deceased, after a few weeks' absence in Arkansas, returned to defendant's mill quarters in April and began the work he was doing when killed. He appears to have become penitent, and gave money to plaintiff on two occasions and provided her with some groceries. She says he visited her several times, and that they cohabited for nightly periods. However, an officer of defendant company undertook to effect a reconciliation between them, without success. When this occurred is not shown. If plaintiff's testimony is to be believed, she was probably putting deceased's sincerity to the test before again resuming full conjugal relations with him. Her evidence to the effect that she was dependent on deceased for support is not contradicted by any of the testimony. It is certain she had no income and owned no property. She lived with her mother while she and deceased were estranged. The record does not conclusively establish that deceased had good cause to abandon plaintiff, or "put her out," as she states, and, if she was unjustly discarded by deceased, her right to claim compensation after his death, if de-

pendent upon him for support, was unaffected. We think her case made out on this score.

It is shown that deceased had the custody of and provided for the child to his death.

■ The defendant's log train left its mill regularly early each working day. The laborers, while not required to ride on this train to their work several miles away, did so habitually, to the knowledge of defendant's officers. When the cars were loaded with logs, the crew would almost invariably return on the train to the mill. If they did not do so, they would ride back on defendant's motor car. We think it is established that, as part of the contract of hiring between defendant and its log-loading employees, including deceased, it was impliedly understood, if not expressly, that they would be transported to and from their work. If they could not have ridden on the train to their work, many miles away, it is improbable they could have reached it in time to begin their labor as early as they were required to do.

■ As a rule, an employee cannot recover for injuries to him while going to or returning from his work. Crysel v. Briggs et al. (La. App.) 146 So. 489.

This rule is different where transportation to and from work is provided by the employer, expressly or impliedly, as a part of the contract of hiring. Lagrone v. McIntyre Lbr. Co., 1 La. App. 567; Nesbitt v. Twin City Forge & Foundry Co., 145 Minn. 286, 177 N. W. 131, 10 A. L. R. 169.

Loading of the log cars the day of the killing was completed at about 2 o'clock of the evening. Deceased's services had terminated for the day. He would be expected to again perform the duties of "tong hooker" the next morning. However, since it was part of the contract of hiring that defendant was due to deliver him back to his home, or to the mill site, we think the relation of employer and employee for the day had not terminated; that he was killed in the course of his employment; and that plaintiff is entitled to recover unless the facts of the case disclose that deceased's death did not "arise out of his employment, that there was no causal connection between the conditions under which his work was required to be done and his death, as provided in the Workmen's Compensation Law and the jurisprudence of the courts construing same.

■■ Injury to or accidental killing of an employee is not compensable unless the injury or death arose "out of and in the course of" the employment and must have been incidental thereto. Kern v. Southport Mill, Ltd., 19 La. App. 338, 136 So. 225; Id., 174 La. 432, 141 So. 19; Conaway & Clark v. Marine Oil Co., 5 La. App. 134.

This question was given thorough consideration by Justice Provosty in the early case, arising under the Workmen's Compensation Law of 1914, of Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 257. The rule laid down in this case, correctly expressed in the syllabus, is: "The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."

Recently, in Crysel v. R. W. Briggs & Co. et al., 146 So. 489, we had occasion to consider this same question. In that case, the plaintiff was injured while traveling to his work on a concrete highway constructed by defendant, but not taken over or finally accepted by the highway commission. The suit was dismissed on exception of no cause and no right of action, because from the facts alleged it was held that plaintiff's injuries did not "arise out of and incidental to his employment." We discussed and referred, somewhat at length, to the leading cases of our own courts on this subject, and to several of other jurisdictions. The reasoning of that decision is applicable to the case now before us.

■ The deceased and his slayer both lived in the mill quarters of defendant. They were daily associated. They often rode the same train out to their work. Their duties were different, but they had the same employer. The nature of the ill feeling between them, and the circumstances of the case, point somewhat definitely to jealousy as being the motive behind their trouble. The fact that deceased and his slayer were constantly thrown together as a result of their employment was calculated to aggravate a pre-existing enmity of possibly several months' standing. That no one seems to know why deceased threatened Williams lends force to the supposition that jealousy was at the bottom of their personal ill feeling. It is of common knowledge that daily association and contact between enemies does not, as a rule, improve their lack of cordial relations, and, when jealousy of the character shown in this case is the cause of the enmity, and where the parties, as in this case, are members of the colored race, it is not surprising that a climax tragic in character should be the result.

■ Deceased's employment to defendant undoubtedly increased the danger of, and risk from, injury at the hands of his enemy, Williams. Such danger and risk were obviously greater for him than it would have been for one not engaged in this employment. The killing of deceased was an "accident" within the meaning of Act No. 38 of 1918, § 1, amending Act No. 20 of 1914, § 38, and arose out of and incidental to his employment.

This case, we think, falls squarely within the rule announced in Ferguson v. Cady-Mc-Farland Gravel Co., 156 La. 871, 101 So. 248, the syllabus of which we quote:

"Injury to a track employee, who, while in a stooping position, was struck on the head by an iron instrument in hands of fellow employee, held an 'accident' within Act No. 38 of 1918, § 1, amending Act No. 20 of 1914, § 38, defining an accident as 'an unexpected or unforeseen event happening suddenly or violently with or without human fault, and producing at the time objective symptoms of an injury.'

"A track employee who, while at work in a stooping position, was struck on the head with an iron instrument in the hands of a fellow employee, held injured by accident 'arising out of and in course of employment,' within Employers' Liability Act."

To the same effect is Dyer et al. v. Rapides Lbr. Co., 154 La. 1091, 98 So. 677. In that case the employee was shot from ambush and killed while making a fire in defendant's engine. The identity of the slayer was not known; consequently no motive for the killing was learned. Compensation was allowed.

We do not think there is any merit in the third defense, supra, urged by defendant. It is true deceased had told Williams he would kill him when he returned from work, but there is no evidence to indicate a purpose on his part to follow the threat by action. Williams did not wait to see what Keyhea's attitude towards him would be, but met the train on which he was traveling, four miles from the mill, and shot him without further delay. The record does not disclose that the killing of deceased was caused by his willful intention to injure Williams. This defense is one of those contained in section 28 of the Workmen's Compensation Law (Act No. 20 of 1914). When pleaded, it devolves upon the employer to establish it. This has not been done.

The judgment of the lower court rejecting the demand of plaintiff, the widow of deceased, is erroneous; and is hereby annulled, avoided, and reversed. The judgment in favor of the minor child will have to be amended.

For the reasons herein assigned, there is now judgment in favor of plaintiff, individually and as natural tutrix of her minor child, Onita Keyhea, against defendant, for compensation as prayed for, viz. for $8.32 per week for a period of 300 weeks, beginning May 5, 1930, with legal interest on each weekly payment from date of its maturity until paid; all costs to be paid by defendant.

MILLS, Judge (dissenting.)

There was bad blood between these two negroes over their women. It is proven that deceased on the day of the shooting told Williams, his assailant, to get his gun, that he was going to kill him when he came back. The difficulty was provoked and invited by deceased. It arose in no way, and was entirely disconnected from, their common employment. It did not occur on the job or during working hours. Williams, the assailant, was not on the train with deceased.

It was not caused by the fact that deceased happened to be returning from work on the company engine. It would have happened had deceased been walking and wherever Williams had found him. This is shown by the fact that he was shot twice on the engine and twice in an adjoining pasture as he was fleeing. As he was able to run after the first two shots, it would appear that he was killed by those fired while he was in the pasture. I do not think an accident arises out of or is incidental to the employment merely because the workman happened to be returning from work, at the time of the injury, on a conveyance furnished by his employer. It must be shown that it was due to some danger arising out of that fact; one that would not otherwise have happened. Crysel v. Briggs et al. (La. App.) 146 So. 489.

In the leading case of Cudahy Packing Co. v. Parramore, 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532, it is held that the danger must be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or in an abnormal degree; that it must be a risk incident to the employment.

Where, by his own willful act, deceased invited this assault and made the difficulty reasonably inevitable, it would have occurred wherever he was found, we cannot agree with the majority opinion that it arose out of or was incidental to the employment. We think the case is clearly distinguishable from those cited in the majority opinion.

Indeed, we think the case can well be held to come under the provisions of paragraph 1, § 28, of the act, which reads: "That no compensation shall be allowed for an injury caused (1) by the injured employee's willful intention to injure himself or to injure another."

In Fisher v. Sherrill Hardwood Lbr. Co., Inc., 3 La. App. 595, the dependents of an employee killed by his foreman while attacking him were denied compensation.

For the reasons given above, I respectfully dissent.