On a previous hearing of this controversy, which occurred on plaintiff's appeal from a judgment sustaining defendants' exceptions of no cause or right of action as to the damages claimed under the general tort law and dismissing the suit, we set aside the district court's judgment, overruling the exceptions, and remanded the case for further proceedings.10 So.2d 532, 535. In this opinion, we set forth the cause of action of the plaintiff, and in conclusion, stated: "Whether or not the defendants in this case can show that the parents of young Ballard, by their acts and conduct, acquiesced in and consented to his employment is a matter to be determined on the trial of the case."
On the remand the defendants allege that Act No. 20 of 1914, as amended, the compensation law of this State, is applicable in the instant case, and that, if election for the minor to come under said Act was necessary, then such election was made by the plaintiff and his wife. In the alternative, and in the event the Court should hold that the compensation statute, Act No. 20 of 1914, as amended, is not applicable, then defendants deny all negligence attributed to them, and in the further alternative, they plead the contributory negligence of Donice Ballard in bar of recovery.
The trial of the merits resulted in a judgment dismissing plaintiff's suit upon the ground that the parents of young Ballard had impliedly consented to his employment. The trial court did not discuss or pass upon the issues of negligence and contributory *Page 594 
negligence nor a side issue between the defendants. Plaintiff has appealed. While the cause was pending in this court Henry Reynaud Stroube, one of the defendants and a member of the partnership firm of Stroube Drug Company, died; his widow and his heirs were substituted for him on a written motion of plaintiff.
The holding of the trial court is to the effect that the action of the plaintiff is governed by the compensation law of this State and not by Article 2315, Civ. Code, the tort law of Louisiana. As previously stated, the trial court failed to discuss the other issues of the case. In this court plaintiff contends that all of the issues presented in the lower court are before the court while defendants contend that only that issue which was decided by the lower court can be considered by us. Due to the conclusion we have reached in this case we shall only consider the issue of whether or not the parents of young Ballard impliedly consented to his employment. In our remand, we made it clear that if it was shown that the parents of Donice Ballard impliedly consented to this employment they thereby impliedly elected for the minor to be governed by the compensation law.
The record discloses that Donice Ballard, the minor son of Mr. and Mrs. Emanuel Ballard, prior to July 8, 1941, had been employed by several concerns, with the consent of his parents, as a delivery boy, on a bicycle, his last such employment being by a feed store operator. After his working hours, on the evening of July 8, 1941, he visited the Stroube Drug Store and there applied to Mr. H. Aldrich Stroube, one of the partners and manager of the partnership firm of Stroube Drug Company, for a job. There being no vacancy, he left his name, address and telephone number with Mr. Stroube. A vacancy having occurred on July 9, in the operation of a three-wheeled motor car, or cycle, Mr. Stroube, on the afternoon of the same day called the `phone number left by Donice and inquired for him, and was informed that Donice was absent. Mr. Stroube left a message with the party with whom he was speaking, and which party later was found to be Donice's mother, to the effect that Donice was to report at the drug store to see about a job. Donice's mother, after receiving this message, immediately drove to Donice's place of employment and informed him of the message. On that evening Donice reported at the drug store and was informed that there was a vacancy for a delivery boy on a three wheeled motorcycle; that Mr. Stroube was absent and to report next morning for work. On the next morning, that is, on July 10, Donice reported for work at about seven-thirty. Mr. Stroube then instructed Earl Brown, an employee and one with knowledge of the use and driving of the motorcycle, to give instructions to Donice in the operation of the motorcycle. Brown took Donice to the Capitol grounds and proceeded to give Donice the instructions as to how to operate the motorcycle. During the giving of the instructions, Brown and Donice visited the home of Donice. After devoting some two hours in instructing Donice, Donice and Brown returned to the drug store. Thereafter Donice was instructed to make deliveries of packages and left. On this first trip the accident happened.
There is a conflict of evidence regarding the purchase and use of a motorbike or putt-putt machine by Donice. After the end of the school session of 1940-1941, and after completing the ninth grade, Donice sought and was given employment as a bicycle delivery boy at a grocery store. It appears that he did not keep this job very long. Thereafter he was employed as a bicycle delivery boy by the Community Cash Drug Store on the Plank Road. While so employed by this drug store, the parents of Donice purchased a motorbike for Donice. The parents contend that this motorbike was purchased for the use of Donice in going to and from his work, while the drug store manager testified that the motorbike was purchased by the parents on the request of Donice in order to earn more money by the use of this motorbike in making the deliveries. The drug store manager refused the use of the motorbike in the making of deliveries and the payment of extra compensation, contending that the use of the motorbike made the employment hazardous and was prohibited by the owners of the drug store. It appears that Donice violated the rules of the store, and was discharged. Thereafter Donice obtained employment with Bacot's Feed Store. It is not shown whether Donice used his motorbike in making deliveries. It was from this employment that Donice went to the Stroube Drug *Page 595 
Store. However, it is not disputed that Donice used his motorbike in going to the Stroube Drug store on all of the occasions.
Mr. Stroube testified that Donice applied for a job as a motorcycle delivery boy on July 8, while Donice testified that he applied for a job as a bicycle delivery boy or as a clerk. The fact remains, however, that there was a vacancy for a delivery boy on the three wheeled motorcycle to the knowledge of Donice. Donice was more interested in obtaining this job than a bicycle job in that he would make more money.
It is significant to note that Donice testified that on the evening of July 9, he had told both parents that not only had he been to Stroube's, but that he "might be able to go to work there," and that his parents had no objection to his working there. It is naturally to be presumed that he also informed them of the proposed increase of wages and the vehicle he was to drive. He is contradicted by his parents in that both testified that neither knew of his visit to the drug store that evening and that there was a prospect of his being employed. As to Mrs. Ballard, while off guard she admits that she had full knowledge that Donice had applied for a job at Stroube's and that Donice had visited the place on the evening of July 9, and that Donice was going back to Stroube's on the morning of the tenth. Mr. Ballard is altogether positive that he had no knowledge of Donice's proposed employment. He would want to leave the impression that he did not know that Donice had left his employment with the drug store on the plank road and had been employed by the feed store. It is more naturally to be presumed that a full discussion was had on the night of the 9th between Donice and his parents as testified by Donice rather than otherwise as testified to by his parents.
Mrs. Ballard testified that she had ordered a package from Stroube to be delivered to her on the morning of the tenth and that in delivering the package Brown was driving the motorcycle with Donice sitting in the back of Brown. She further testified that she ordered Donice off of the motorcycle, and did not inquire as to whether he was successful in obtaining employment regardless of the fact that she well knew that Donice had left home that morning to go to Stroube's for a job. In this she is contradicted by Brown, who states that he had no package to deliver at Mrs. Ballard's or at any other place; that the visit was made during the period of instruction and that Donice did the driving. He states that he did not hear Mrs. Ballard order Donice off of the motorcycle. Brown further states that Donice informed his mother that he had obtained the job, liked it, and could handle the motorcycle "all right".
The trial court, in a well considered opinion, reached the following conclusion:
"After reading all of the testimony in this case carefully I am convinced that both parents of Donice Ballard knew of Donice's application to Stroube Drug Company for a job as delivery boy and that neither of them objected to his being so employed, and that both of them impliedly consented thereto. Evidently they both thought that he would have a better job than the one he already had. It is possible that Mr. Ballard did not know that Donice contemplated delivering on a motorcycle but from the evidence and surrounding circumstances, I am persuaded that Mr. Ballard even knew that.
"At any rate, both knew that he was employed, or was to be employed as a delivery boy, and they knew or should have known that he would be required to use such means as was then employed by Stroube Drug Company for that purpose.
"In my opinion, the knowledge of the parents that young Ballard was entering the employment of Stroube Drug Company and their acquiescence therein is sufficient to constitute a presumed election to come under the Workmens Compensation Law.
"That fact that they made no request that his work be done only on a bicycle and not otherwise, and the fact that after his mother actually saw him on a motorcycle of defendant, Stroube Drug Company, no protest concerning the same was made to Stroube Drug Company, in my opinion, creates the presumption that the parents had no objection to the mode of transportation employed by defendant company.
"The fact that they did not know the exact nature of their son's duties or the details of his employment, in my opinion, is immaterial from the standpoint of the presumed election. See Brooks v. American Mutual Liability Insurance Company [La.App.],7 So.2d 658; Liner et al. v. Riverside Gravel Co. et al., 13 La.App. 664, 127 *Page 596 
So. [146] 147; Garcia et ux. v. Salmen Brick Lumber Co.,151 La. 784, 92 So. 335."
Like the District Court, after a careful review of the record, we are of the opinion that the parents of young Ballard, by their acts and conduct, acquiesced in and consented to his employment by the defendant drug company and accordingly the judgment of the lower court is affirmed.
Judgment affirmed.