This is an appeal from a judgment in favor of Claude Melton, suing on behalf of *Page 885 
his minor daughter, Jean Sunshine Melton, awarding damages under Article 2315, Revised Civil Code, for injuries received by the daughter while employed in the defendant's canning factory at Winnfield, Louisiana. The petition sets forth that the daughter was under eighteen years of age and that there had been no election to come under the Compensation Act, Act No. 20 of 1914, as amended. There was an alternative demand for workmen's compensation.
Defendants met the tort claim with a plea of estoppel alleging that both parents of the injured employee knew of her employment and therefore tacitly elected to come under the Compensation Act and further that the parents — and daughter after she became eighteen — are estopped by the acceptance of weekly compensation for a period of two years following the accident.
The plea of estoppel was tried and overruled. Mrs. Melton's claim was dismissed as of nonsuit, leaving Claude Melton as the sole plaintiff.
After reurging their claim that plaintiff's case was governed by the Compensation Law, defendants in their answer pleaded that there was no negligence and that if there was any defect in the canning factory equipment such defect was latent, not discoverable upon inspection, and therefore defendants were not liable in tort for Miss Melton's injuries.
The district judge held that there had been no election under the Compensation Act; that the injury resulted when the steam containing equipment broke down on the first day that the canning plant was put in operation; that while the cause of the breakdown under the pressure of steam was not disclosed by the evidence, the fault was either in the construction of the machinery or in defective material and in either instance the defendants were liable under Article 2315, Revised Civil Code.
The first question to be decided is whether there was an election by Miss Melton's parents, she being under the age of eighteen, for her to come under the terms of the Compensation Act.
Defendants' contention is that both Miss Melton's parents knew that she was going to work in the defendant's canning plant and fully acquiesced therein. Testimony on this point was taken on the trial of the preliminary plea of estoppel and during the trial on the merits.
We find, as did the district court, that the father, who was employed at an Army airfield some forty-five miles from Winnfield, did not know of his daughter's employment until after the injury; that he had left home at six o'clock on the morning of the accident and did not return until late in the afternoon when he learned that his daughter had gone to work on that day for defendants and that she had been severely injured and was being placed in an ambulance for transfer to the hospital in Shreveport, Louisiana. We find that Mrs. Melton, wife of plaintiff and mother of the injured employee, knew several days in advance of her daughter's prospective employment and knew at noon on the day of the accident — the first day of her daughter's employment — that Miss Melton had worked in the canning plant during the morning and was returning to work in the afternoon.
The question before us for decision is whether or not the knowledge of the mother constituted acquiescence in and consent to that employment within the meaning of the Compensation Act — Section 3 of paragraph 6, Act 20 of 1914, as amended by Act 85 of 1926. This section provides that the "right of election * * * shall be exercised on behalf of any employee under the age of eighteen by either his father, mother or tutor, or if neither of these can readily be gotten to act, then by the Court."
The case of Ballard v. Stroube Drug Co. et al., La. App.,10 So.2d 532 (on exception) and La. App., 19 So.2d 593 (on the merits) is a late expression of the Louisiana courts as to the circumstances under which the parents are presumed to have consented or approved the minor's employment. Below is quoted paragraph 2 of the syllabus of the Court of Appeal opinion reversing a holding of the district court sustaining an exception of no cause of action: "The presumed election to come under the compensation act in order to have effect against a minor under 18 must have the implied or express consent or approval of a parent or tutor, and where parents know of employment *Page 886 
and permit minor to work without protest, or acquiesce in employment by knowingly permitting minor to receive wages, or receive benefits from his employment, such acts would constitute an 'implied election' for minor to be governed by the act. Act No. 20 of 1914, § 3, subds. 3, 4, 6, as amended by Act No. 85 of 1926."
When the case came back to the Court of Appeal, after the trial on the merits, the court found that both parents of young Ballard acquiesced in and consented to his employment with the drug company, and affirmed the judgment of the district court holding that the knowledge of both parents that Ballard was entering the employment of the drug company and the acquiescence therein was sufficient to constitute an election to come under the Workmen's Compensation Law.
The case now before us is distinguishable from the Ballard case, supra, in that Mr. Melton did not have knowledge of his daughter's employment. Article 216 of the Revised Civil Code provides that the "child remains under the authority of [its] father and mother" and further provides "in case of difference between the parents, the authority of the father prevails."
[1] The above quoted provision of the Compensation Act provides that the election on behalf of the employee under eighteen shall be "by either his father, mother or tutor, or if neither of these can readily be gotten to act, then by the Court." A fair interpretation of the provision is that in the case of a minor whose father is readily available, the decision is his. In the case of a minor whose father is deceased, or for other good reason is not readily available, responsibility for making the election rests with the mother, and in a case where the minor has a tutor, who is readily available, the consent of the tutor is required.
[2] We find justification in the record for the district court's holding that — under the circumstances as revealed by the record — the mother's knowledge that her daughter intended to start working in the plant and had worked during the morning and in the afternoon until the time of the accident, did not constitute a consent and acquiescence sufficient to be considered an election under the Compensation Law.
Moreover, in view of Article 216, Revised Civil Code, and the above quoted section of the Compensation Act, even had the mother, on the day of the employment and accident, given complete consent and acquiescence, nevertheless the father, plaintiff in this case, whose daughter lived in the household with him and who was readily available in that he returned every night after his work, had the legal responsibility of making the election on behalf of his minor daughter. No knowledge, consent or acquiescence on his part is shown.
The action in tort was properly considered.
On the issue of negligence we agree with the finding of fact by the district court that the defendants are responsible. Miss Melton's terrible burns resulted when hot water and live steam from an apparatus over which she had no control was suddenly loosed in the place where her duties required her to be. The water reservoir, capacity of 200 gallons, was welded to a steam jacket and supported by four iron rods extending from the bottom of the steam jacket to the inside bottom of the water reservoir. The defendants did not establish that this construction was standard in design or considered sufficient by those who understand the use and handling of such equipment. After the accident, the canning company employed Mr. Aydelott, owner of a welding shop in Winnfield, to construct a new reservoir. He testified that the old steam jacket and reservoir were brought to his shop; that inside the water reservoir there were four holes and four rods and that the pressure put on that day "blowed that loose" and "left a hole where each of the rods was and two of them blowed completely loose." He further testified that after the accident the steam jacket was discarded and the water heated by installing heavy duty pipe to carry the steam through the water reservoir and back to the boiler. His explanation of why the steam burst out of the jacket was "light material and sorry welding."
[3] The jacket and reservoir were purchased secondhand in South Louisiana. *Page 887 
After the transfer of this bulky equipment, there was no inspection by experienced welders or steam fitters as to its serviceability after the hazards of transport. Our examination of the entire record convinces us that the accident and injury to Miss Melton was the direct result of defendants' use of inadequate, faulty or damaged equipment.
The defendants have cited the case of Martin v. Interurban Transportation Co., Inc., 15 La. App. 256, 131 So. 514. In that case plaintiff was injured when a tie rod connecting the front wheels of a bus broke and caused the bus to get out of control. The court held that the carrier's duty to furnish safe machinery and appliances is discharged by the purchase of these from competent and reputable manufacturers and by inspection to detect defects discoverable by any test which the highest degree of care and prudence can suggest. This doctrine is not applicable to the case before us, since there is no proof that the secondhand reservoir and steam jacket arrangement were of standard manufacture and design or that an adequate inspection was made to detect defects in the used equipment, or that there was a careful checking to discover weakening of the welded contacts — something likely to have occurred in the process of dismantling, packing, transporting from South Louisiana to Winnfield and final installation.
[4] Miss Melton was badly burned about the face, arms and body. Her condition was critical for days. She suffered second and third degree burns and was in the hospital for nearly two months and under treatment for more than two years. The healed places frequently "broke down." Her arms, breasts and body are permanently scarred; the skin on her breasts, upper arms, abdomen, hips and middle body is pulled forward and is inelastic. This condition in the abdomen, hips and middle body will likely cause trouble in the event she should ever undertake to bear children as the skin would not be elastic enough to expand in the process of bearing the unborn child and in the process incident to delivery. The scars are ugly and at the time of the trial she remained in a very nervous condition and was unable to perform heavy work. Under these circumstances, the judgment of $12,000 for "pain and suffering, disfigurement, disability and damages" is not excessive.
[5, 6] No credit was allowed by the district court for the compensation payments made for approximately two years after the accident, including one year after the suit was filed. We think that substantial justice will be done by allowing credit for the compensation payments made. The record supports the judgment for $1,664.57 expenses incurred, but does not show that plaintiff's expenses were in addition to the $500 paid by defendants and, therefore, credit should be given for that amount.
[7] The district court judgment awards interest from date of judgment instead of from judicial demand. We will not disturb the judgment on that point since no answer was filed to defendants' appeal and appellee here has only asked that the judgment be affirmed.
We have concluded to recast the judgment. The judgment appealed from is set aside and judgment is hereby rendered in favor of the plaintiff individually and against the defendants, Fraering Brokerage Company, Inc., and National Casualty Company, in solido, in the sum of $1,164.57, with interest from January 6, 1947 until paid. Judgment is further rendered in favor of plaintiff for the use and benefit of Jean Sunshine Melton and against the defendants, Fraering Brokerage Company, Inc., and National Casualty Company, in solido, in the sum of $12,000, with interest from January 6, 1947 until paid, subject to credit for all amounts paid to plaintiff or to the injured employee as weekly compensation by either defendant.
Plaintiff to pay costs of this appeal. All other costs to be paid by defendants. *Page 888