173 So.2d 231 (1965)
Johnny H. ROGERS, Plaintiff and Appellee,
v.
The AETNA CASUALTY AND SURETY COMPANY et al., Defendants and Appellants.
No. 1380.
Court of Appeal of Louisiana, Third Circuit.
March 24, 1965.
Rehearing Denied April 14, 1965.
Writ Refused May 3, 1965.
Gold, Hall & Skye, by Leo Gold, Alexandria, for defendant-appellant.
Bernard Kramer, Alexandria, for plaintiff-appellee.
Before CULPEPPER, TATE and HOOD, JJ.
HOOD, Judge.
Plaintiff, Johnny Rogers, as tutor of the two surviving minor children of Mrs. Kay Jones, claims workmen's compensation benefits alleged to be due said children because of the death of their mother. Mrs. Jones was an employee of Charles D. Ward at the time of her death. The suit was instituted against Ward and his compensation insurer.
After trial on the merits, judgment was rendered by the trial court, awarding plaintiff compensation at the rate of $18.70 per week for 400 weeks, together with penalties and $1,500.00 as attorney's fees. Defendants have appealed, and plaintiff has *232 answered the appeal, praying that the amount awarded as attorney's fees be increased.
The principal question presented on this appeal is whether Mrs. Jones' death resulted from an accident "arising out of and in the course of" her employment.
The evidence shows that on October 13, 1963, Mrs. Jones was working for defendant, Ward, as a taxicab dispatcher in the City of Alexandria. At about 7:25 a. m. on that date, she was shot to death by a cab driver named James Frank Moody. At that time, Moody was renting a cab from defendant Ward, and he was operating it from the cab stand, or dispatcher's office, where Mrs. Jones worked.
Mrs. Jones had accepted Moody's invitation to meet him at a bar in Alexandria at about 4:00 p. m. on October 12, and she remained with Moody from that time until about 2:30 a. m. on October 13. During that time, both the decedent and Moody consumed several drinks of beer or alcoholic beverages. At about 2:30 that morning they became involved in a minor automobile accident outside the city, and shortly thereafter Mrs. Jones left Moody and rode back to Alexandria with another cab driver named Marvin Guillory. Moody, apparently being displeased over the fact that Mrs. Jones had left, began to search for her in Alexandria. He located Guillory and Mrs. Jones about 4:30 that morning, and an argument or disturbance then ensued which was terminated when the City Police intervened and compelled Moody to leave. There is no question but that Moody was angry with Mrs. Jones at that time.
Mrs. Jones was scheduled to report to work at 7:00 a. m. on that day, October 13. The dispatcher's office where she worked is located in the rear portion of a building, the front portion of which is occupied by Lavergne's Telephone Answering Service. About 6:35 that morning, Mrs. Jones entered the office of the telephone answering service and visited with the operator of that service who was on duty at that time. At about 6:55, Mrs. Jones left that office and went into the rear portion of the building to the taxicab dispatcher's office where she customarily worked. The operator of the telephone answering service then turned down the telephones in that office so that thereafter Mrs. Jones would receive all incoming calls of the cab company. And, as soon as Mrs. Jones reached her office she disconnected a microphone which theretofore had been used by the answering service to transmit calls for taxicabs.
Moody entered the front door of the building where these offices were located at 7:05 that morning. After visiting with the operator of the telephone answering service in the front of the building for two or three minutes, he then walked back to the rear part of the building into the dispatcher's office where Mrs. Jones was working. Moody and Mrs. Jones remained in that office until 7:25 a. m., at which time he shot Mrs. Jones six times, killing her almost instantly. Moody walked out of the dispatcher's office shortly after the shooting and informed the operator of the telephone answering service that he had shot Mrs. Jones.
Immediately after the shooting, the decedent's body was found on the floor of the dispatcher's office very near and almost in front of her desk. The evidence clearly establishes that she was in her office and at her desk at the time of the shooting. Although defendants contend otherwise, we think the evidence establishes that Mrs. Jones had been performing the duties of her office from the time she was scheduled to be at work at 7:00 a. m. until the time of the shooting, and that she was engaged about her employer's business at the time she was killed.
Under the provisions of LSA-R.S. 23:1031, the employer is obliged to pay compensation benefits if an employee receives personal injury by accident "arising out of and in the course of his employment." The defendants contend that the injury *233 which resulted in the death of Mrs. Jones did not occur "in the course of" her employment, and that the shooting was not an accident "arising out of" that employment.
Since the injury was sustained at the place of the decedent's employment, during her regular working hours and while she was engaged in her employer's business, we think it clearly occurred "in the course of" her employment. The question remains, however, as to whether the shooting constituted an accident "arising out of" the employment.
The two leading cases which set out rules or tests to be applied in determining whether an accident is one "arising out of" the employment are Myers v. Louisiana Railway & Navigation Company, 140 La. 937, 74 So. 256, and Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19.
In the Myers case, decided in 1917, our Supreme Court applied a rule which has been referred to at time as the "increased risk doctrine." According to that decision, the test to determine whether injuries to an employee arose out of the employment is not whether the cause of the injury was something peculiar to that line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. In so holding, the court said:
"It ought to be sufficient that the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."
Defendants point out, correctly we think, that the rule set out and applied in the Myers case is the one which is followed by courts in a majority of our states. See Larson, The Law of Workmen's Compensation, Sections 6.10, 7.20 and 11.21. And we note, as pointed out by the defendants, that the Myers case has been cited and followed in a number of later decisions in this State.
In Kern v. Southport Mill, Ltd., supra, decided in 1932, the Supreme Court determined that a new, different and much more liberal test should be applied in determining whether an accident is one "arising out of" the employment, the rule set out in that case being referred to sometimes as the "time, place and circumstance doctrine." In that case the court stated:
"In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?"
The rule announced and applied in the Kern case was quoted and followed by our Supreme Court in the later case of Harvey v. Caddo De Soto Cotton Oil Company, Inc., 199 La. 720, 6 So.2d 747. In the Harvey case, the court, in commenting on the earlier decision, said:
"It will be seen from the foregoing that this Court has enunciated a view with respect to the meaning of the words `arising out of' as used in our compensation statute which is considerably broader than the interpretation placed upon similar language by other State courts.
"A careful reconsideration of the Kern case impresses us with the soundness of the opinion, for, when we delve into the underlying theory upon which workmen's compensation laws have been enacted, we believe that it is in keeping with the spirit of such statutes to resolve that any accident which befalls an employee, in consequence of a *234 force to which he is subjected because he is required to be at a particular place at the time the force exerts itself, is one arising out of and having causal connection with the employment. With due deference to the jurisprudence to the contrary, it seems to us that the laborious efforts of some of the courts in weighing the evidence in order to discern whether the hazard to the employee has been increased by reason of the employment are tenuous and involve considerable guesswork and conjecture on the part of the judges.
* * * * * *
"We prefer to place our decision on what we believe to be a sound footing, that isthat the deceased, by reason of his employment, was required to be in a building which fell upon him; that his death was due to the fact that his employment necessitated that he be at the place where the accident occurred and that, therefore, giving the compensation act the liberal interpretation to which it is entitled, the accident arose out of, and was incident to the employment."
The Kern case also has been cited and followed on numerous occasions since that decision was rendered.
Plaintiff, asserting that the Kern case is applicable, contends that the accident involved here was one "arising out of" the employment because it occurred at the time and the place of the employment, and while the decedent was engaged about her employer's business. He argues, therefore, that all of the elements necessary to meet the test set out in the Kern case are present.
Defendants, on the other hand, contend that the rule set out in the Myers case is applicable, and that compensation benefits are not due because there was no connection between the decedent's employment and the cause of her death. It is argued that the origin of the harm which caused the death was personal to Mrs. Jones, that the animosity which culminated in the assault was imported from the employee's private life, and that the risk was not increased by or in any manner connected with the employment.
The seemingly inconsistent rules set out in the Myers and Kern cases have caused considerable confusion in our jurisprudence. Both of these cases, together with other jurisprudence relating to this issue, are analyzed and discussed by Professor Wex Malone in his excellent publication, Louisiana Workmen's Compensation Law and Practice. In that discussion the author suggests that there is no real conflict in the Myers rule and the Kern rule, as those cases have been applied, that the Kern rule is applicable where the accident clearly occurred in the course of the employment, and that the Myers rule is applicable in cases where it is somewhat doubtful that the employee was acting within the course of his employment at the time of injury or death. In that connection, the author states:
"The reader is urged not to conclude from the foregoing observations that the rule in Myers v. Louisiana Railway & Navigation Company is merely a confusing bit of window dressing in the opinions. The character of the risk that brought about the accident is, and should be, a very important consideration in cases where it is somewhat doubtful that the employee was acting within the course of his employment at the time of injury or death.
* * * * * *
"The terms during the course of and arising out of are not independent notions which can be considered in isolation from each other. At certain times the worker will be protected against virtually any risk he may encounter. These are the times when his activities are very closely connected with his employer's business and it can be said that he is acting in direct response to the call of duty. At other times, when the activities of the worker bring him barely *235 within the outer fringe of his employment he will be protected only against risks which can be closely associated with the nature of his duties or with the circumstances under which he is obliged to work and live. In other words, during these latter times he is within the course of employment only with reference to a fairly limited group of employment risks. Viewed in this perspective there is no real conflict between the Myers rule and the Kern rule. They are in opposition with each other only in the sense that there is a clash of generalities. Both rules are useful. Neither, however, is acceptable as a self-sufficient determinant because neither gives full consideration to the complete interdependence of the notions that the accident must happen during the course of employment and must also arise out of it." (Malone, Louisiana Workmen's Compensation Law and Practice, Sec. 192, pp. 229-230)
We agree with Professor Malone in his excellent analysis of these two cases and in the conclusion which he has reached.
Since Mrs. Jones was engaged about her employer's business at the time of the assault, and since the injury was sustained during the time and at the place of her employment, it appears to us that the "time, place and circumstance" rule of the Kern case properly should be applied. This is not a case where the activities of the employee bring her barely within the "outer fringe" of her employment, and thus the rule set out in the Myers case is not applicable.
The facts and issues presented in the instant suit are similar to those which were presented in Williams v. United States Casualty Company, La.App., 4 Cir., 145 So.2d 592 (cert. denied), and in Livingston v. Henry & Hall et al., La.App. 2 Cir., 59 So. 2d 892. In the Williams case the plaintiff was shot and seriously injured by a patron in a saloon where she was employed as a barmaid. The assailant was a man with whom she had formerly lived as man and wife, and the animosity between them had arisen from their personal relations, there being no connection between that animosity and plaintiff's employment. The court, after quoting and applying the rule set out in the Kern case, held that the accident was one "arising out of" the employment and that plaintiff was entitled to recover compensation benefits.
In Livingston v. Henry & Hall et al., supra, the employee was shot and killed by a third party because of some improper attention which the decedent was suspected of having paid to the assailant's wife. The court held that the accident was one arising out of the employment and thus was compensable, reasoning that the "deceased would not have lost his life except for the fact that he was working on the road at the particular time and place when his assailant was on his way to try to effect a reconciliation with his wife." Although the Kern case was not cited, the court in the Livingston case applied both the "time, place and circumstance" rule of the Kern case, and another rule referred to as the "zone of special danger" doctrine which had recently been announced in the case of Edwards v. Louisiana Forestry Commission, 221 La. 818, 60 So.2d 449.
The case of Edwards v. Louisiana Forestry Commission, supra, involved an employee who was injured when he left his place of employment to rescue a child which was being attacked by a dog. The court held that the Kern case was not analogous from a factual standpoint. Applying the "zone of special danger" doctrine, the court held that it was reasonably within the scope of plaintiff's employment to attempt to rescue anyone endangered on the employer's premises, and thus that the accident arose out of the employment.
Defendants direct our attention to the convincing and scholarly dissenting opinion of one of the members of the court in the Livingston case. We recognize the merit *236 to the views expressed in that opinion, but we note that the Supreme Court refused to grant writs in that case, assigning as its reasons for refusing to do so that, "According to the facts as found to be true by the Court of Appeal, the judgment is correct." We assume, therefore, that the majority opinion represents the views of our Supreme Court.
Among the authorities cited and relied on by defendants are the cases of Long v. Hardware Mutual Insurance Company, La. App. 4 Cir., 137 So.2d 486; Lirette v. Boh Brothers Construction Co., Inc., La.App. 1 Cir., 161 So.2d 405; Seals v. City of Baton Rouge, La.App. 1 Cir., 94 So.2d 478; LeCompte v. Kay et al., La.App. 1 Cir., 156 So.2d 75; and Blake v. Fidelity & Casualty Company of New York et al., La.App. 2 Cir., 169 So.2d 608. We have carefully considered each of these cases, but are unable to agree with defendants that they constitute sufficient authority to warrant a reversal of the trial court's judgment.
In the Long case, where the plaintiff was the victim of a dangerous practical joke, a serious question was raised as to whether the plaintiff was in the course of his employment. Yet the "time, place and circumstance" rule of the Kern case was specifically recognized and applied, and the accident was held to have arisen out of the employment. The court did state, as pointed out by defendants, that it "would not be willing to apply the Kern or Edwards test to the extent applied in Livingston," but it then observed that each compensation case must stand on its own facts, and after citing and discussing each of these cases, the court concluded that the accident was one "arising out of" the employment.
The Lirette and Seals cases involved heart attacks sustained by the employees. Although language was used in each of those cases which tends to support the arguments of defendants, we do not consider either of those cases to be applicable here because of the great difference in the issues presented and in the types of injuries involved. In the Lirette case, for instance, it was determined that the heart attack resulted from natural causes, as in case of sickness, and not from an accident. In the Seals case the heart attack occurred while the employee was at his home, and while on vacation, and thus it clearly did not occur in the course of his employment.
In both the LeCompte and the Blake cases, the injured employees were the victims of accidental shooting. The court concluded in each instance that at the time the accident occurred the employee was not engaged about his employer's business, but on the contrary, was engaged in a personal activity of his own. Neither the Myers nor the Kern cases were cited in the Lirette suit. In the Blake case, however, both of those cases were discussed, and the "time, place and circumstance" rule of the Kern case was quoted and applied. Defendants call our attention to the fact that in the Blake case the court also considered the "nature and control of the instrumentality which caused the injury and the purpose for which such instrumentality was intended to be used," and they argue that the decision thus was based on the theory that in all instances there must be some direct relationship between the injury and the employment before an accident can be regarded as having arisen out of the employment. We agree that in the Blake case it was proper for the court to consider the nature and control of the shotgun which caused the injury, but we think the reason for doing so was to determine whether the employee was engaged about his employer's business, as required by the Kern rule, or whether he was engaged in a purely personal activity. In the instant suit Mrs. Jones obviously had no control over the instrumentality which caused her death, but if that fact has any significance at all it would tend to show that she, unlike the employee in the Blake case, had not deviated from the duties of her employment prior to the accident.
*237 We have considered several other cases relating to this issue, some of which are: Warren v. Globe Indemnity Co., 217 La. 142, 46 So.2d 66; Laine v. Junca, 207 La. 280, 21 So.2d 150; Nesmith v. Reich Bros. et al., 203 La. 928, 14 So.2d 767; Mabry v. Fidelity & Casualty Company of New York et al., La.App. 2 Cir., 155 So.2d 44; O'Connor v. American Mutual Liability Insurance Co., La.App.Orl., 87 So.2d 16; Catherin v. Commercial Casualty Insurance Co., 1 Cir., 18 La.App. 690, 138 So. 455; and Pickett et al. v. Southern Carbon Co., La.App. 2 Cir., 7 La.App. 296.
We have considered defendants' argument that the decisions rendered in the Williams and Livingston cases "are in error," and that the Larson approach should be adopted (Larson, The Law of Workmen's Compensation, Sections 6.10, 7.20 and 11.21). Also, we are aware of the fact that legal scholars disagree strongly as to whether the Kern rule, as applied in cases of this kind, is wise or is consistent with the letter and spirit of the Workmen's Compensation Act. Our function, however, is to interpret and to apply the settled law as it now exists, and we are bound to follow the precedents which are set by our Supreme Court. However meritorious these arguments of defendants may be, therefore, we think they address themselves to the Legislature rather than to this court.
After considering all of these arguments, the authorities hereinabove cited and the facts which have been presented, we conclude, as did the trial judge, that the Kern rule is applicable in the instant suit, and accordingly that the accident which resulted in Mrs. Jones' death did arise out of her employment, since it occurred at the time and place of the employment, and while the decedent was engaged about her employer's business.
Although unnecessary for a disposition of the suit, we think it is appropriate to observe that the accident involved here might logically be considered as having arisen out of the decedent's employment, even under the "increased risk" doctrine of the Myers case. We say this because of the fact that Mrs. Jones and her assailant were both working at the same place for the same employer, and thus the duties of her employment may have subjected her to an added risk by requiring her to be in the immediate vicinity of the person who had great animosity toward her. See Ferguson v. Cady-McFarland Gravel Company, 156 La. 871, 101 So. 248; Dyer et al. v. Rapides Lumber Co., 154 La. 1091, 98 So. 677; Ivory v. Philpot Construction Co. et al., La.App. 2 Cir., 145 So. 784; and Keyhea v. Woodard-Walker Lumber Co., Inc., La.App. 2 Cir., 147 So. 830. In view of that observation, we make it clear that in this case we have not determined what the rights of any of the parties to this suit might have been in the event the rule of the Myers case should have been applied.
We now turn to the issues raised as to penalties and attorney's fees. Although there was some confusion in our jurisprudence for a number of years as to the legal issues presented here, we think the jurisprudence had been settled by the time this accident occurred. For that reason we find no error in the decision of the trial judge to award plaintiff penalties and attorney's fees.
The trial judge stated in his reasons for judgment that he was familiar with all of the work which had been done by the attorney in the case, and that he felt that an award of $1,500.00 as attorney's fees was adequate. The record shows that no exceptions were filed by defendants, no interrogatories were propounded to plaintiff, no depositions were taken, and the trial of the case was completed in one day. Considering those facts and the amount of the compensation benefits recovered by plaintiff, we think the amount awarded as attorney's fees is adequate.
*238 For these reasons, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendants-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.